**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JON LOEVY and MIKE KANOVITZ,<br><br>Plaintiffs,<br><br>v.<br><br>LEONARD TANNENBAUM, BERNARD BERMAN, ROBYN TANNENBAUM, DAN NEVILLE, ALEXANDER FRANK, THOMAS HARRISON, BRANDON HETZEL, ROBERT LEVY, MARNIE SUDNOW, and AS-YET UNNAMED AFC SPOKESPERSON,<br><br>Defendants. | Case No. 1:26-cv-03667<br><br>Hon. Jeremy C. Daniel |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................ 5

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS .............. 6

II.    THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM. .............................. 9

      A.     Plaintiffs Do Not Even Attempt to Attribute A Defamatory Statement to Seven of the Nine Defendants...................................................................................... 9

      B.     Plaintiffs Do Not Plead Defamatory Statements ...................................................... 10

III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER N.Y. CIV. RIGHTS LAW § 70-A ........................................................................................................ 13

CONCLUSION......................................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................ 17

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Advanced Flower Cap. Inc., et al. v. Kanovitz, et al.*,
2026 WL 892269 (S.D.N.Y. Mar. 31, 2026)...........................................................................1, 4

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...............................................................................................5, 6

*AFC Agent LLC v. JG HoldCo LLC*
(Supr. Ct. N.Y. Cnty. Apr. 28, 2025, Index No. 652644/2025) ..................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................5

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ...................................................................................................8

*Brownell v. Alcon Entm't, LLC*,
2017 WL 11884028 (N.D. Ill. Dec. 19, 2017).............................................................................6

*Burdick v. Superior Court*,
233 Cal. App. 4th 8 (2015) ......................................................................................................8

*Calder v. Jones*,
465 U.S. 783 (1984).........................................................................................................2, 7, 8

*Carroll v. Trump*,
590 F. Supp. 3d 575 (S.D.N.Y. 2022)......................................................................................15

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) ...............................................................................................................15

*Defend v. Lascelles*,
500 N.E.2d 712 (Ill. App. Ct. 1986)........................................................................................11

*Doo v. Sie-En Yu*,
31 Misc. 3d 1204(A) (Sup. Ct. Queens Cnty. 2011)................................................................13

*Fosnight v. Jones*,
41 F.4th 916 (7th Cir. 2022) ....................................................................................................3

*Green v. Rogers*,
917 N.E.2d 450 (Ill. 2009) ........................................................................................12

*Hayden Gateway LLC v. Advanced Flower Cap. Inc.*
(D.N.J. Apr. 17, 2025, 3:25-cv-02789) .........................................................................4

*Herman v. Cataphora*,
730 F.3d 460 (5th Cir. 2013) ......................................................................................8

*Heying v. Simonaitis*,
466 N.E.2d 1137 (Ill. 1984) ...................................................................................9, 10

*Hoffman v. Barnes*,
2012 WL 1021837 (N.D. Ill. Mar. 26, 2012) ...........................................................7, 8

*Hopewell v. Vitullo*,
701 N.E.2d 99 (Ill. App. Ct. 1998) ............................................................................11

*Imperial Apparel, Ltd. v. Cosmo Designer Direct, Inc.*,
882 N.E.2d 1011 (Ill. 2008) ......................................................................................10

*JG Holdco LLC et al. v. Tannenbaum et al.*,
No. 25STCV26439 (Cal. Super. Ct. Sept. 8, 2025) .....................................................4

*Johnson v. TheHuffingtonPost.com, Inc.*,
21 F.4th 314 (5th Cir. 2021) .......................................................................................8

*Kim v. Hoseney*,
2013 WL 474511 (N.D. Ill. Feb. 7, 2013), *aff'd sub nom. Kim v. Hoseney*, 545
F. App'x 521 (7th Cir. 2013) .....................................................................................11

*Lexington Ins. Co. v. Hotai Ins. Co.*,
938 F.3d 874 (7th Cir. 2019) ......................................................................................6

*McCall v. Zotos*,
2023 WL 3946827 (11th Cir. June 12, 2023) ...............................................................8

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .....................................................................................................10

*Murchinson Ltd. v. Nano Dimension Ltd.*,
2025 WL 1397615 (S.D.N.Y. May 14, 2025) ............................................................15

*PetEdge, Inc. v. Garg*,
234 F.Supp.3d 477 (S.D.N.Y. 2017) ..........................................................................14

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ......................................................................................5

*Robbins v. 315 W. 103 Enters. LLC*,
  204 A.D.3d 551 (N.Y. App. Div. 2022)..................................................................................13

*Solaia Technology, LLC v. Specialty Publishing Co.*,
  852 N.E.2d 825 (Ill. 2006) ................................................................... 10, 11, 12, 13

*Tamburo v. Dworkin*,
  2006 WL 8444037 (N.D. Ill. Aug. 3, 2006) ...............................................................6

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ...............................................................................7, 8

*TRB Acquisitions LLC v. Yedid*,
  239 A.D.3d 578 (N.Y. App. Div. 2025)...................................................................14

*Walden v. Fiore*,
  571 U.S. 277 (2014) .............................................................................................7, 8

## Rules / Statutes

735 ILCS 5/2-209(1) .................................................................................................6

N.Y. Civ. Rights Law § 70-a ......................................................................... 13, 14, 15

N.Y. Civ. Rights Law § 76-a ..................................................................................13

Rule 12(b)..................................................................................................................5

**INTRODUCTION**

Plaintiffs Jon Loevy and Mike Kanovitz seek to haul defendants Leonard Tannenbaum, Bernard Berman, Robyn Tannenbaum, Daniel Neville, Alexander Frank, Thomas Harrison, Brandon Hetzel, Robert Levy, and Marnie Sudnow (collectively "Defendants") into court on a baseless *$100 million* defamation and anti-SLAPP suit premised on the theory that *Defendants* use litigation as a tool for intimidation. Plaintiffs must have a keen sense of irony; either that or they lack any sense of irony at all. In any case, their meritless Complaint should be dismissed.

Defendants are directors, officers, or others affiliated with Advanced Flower Capital Inc. ("AFC"), which in 2021 extended a $75 million loan to a group of cannabis companies (the "Borrowers") controlled by Loevy and Kanovitz. The Borrowers drew on AFC's loan facility nearly 100 times, certifying in writing each time that no event of default had occurred. Each certification was false. In reality, the Borrowers committed multiple fraudulent acts relating to the loan, including: transferring nearly $20 million in loan proceeds to entities owned by Loevy and Kanovitz that were not party to the credit agreement, diverting nearly $1 million in cash collateral to pay debts owed by Loevy's and Kanovitz's law firm, and submitting fraudulent invoices. After AFC learned of this misconduct, it accelerated the loan and sued Loevy and Kanovitz in the Southern District of New York (the "SDNY Action"). AFC originally styled its complaint as a RICO action. After changing counsel, AFC filed an amended complaint that excised the RICO claim but realleged the same core allegations in support of a fraud claim. Last month, the court in the SDNY Action upheld the amended complaint as plausibly stating a fraud claim. *See Advanced Flower Cap. Inc., et al. v. Kanovitz, et al.*, 2026 WL 892269, at *10-13 (S.D.N.Y. Mar. 31, 2026), ECF No. 40.

This action arises from the SDNY Action. In their Complaint, Loevy and Kanovitz have sued nine board, C-suite, and other personnel of AFC—in a forum where none reside and no suit-

1

related conduct is alleged to have occurred—on claims that Defendants' fraud allegations are defamatory and that Defendants' filing of the SDNY Action violated New York's anti-SLAPP statute.

The Complaint is larded with specious attacks on AFC and its chairman, and other irrelevancies. It is not until page 27 that one finally encounters allegations relating to the claims, and those allegations are manifestly deficient. To begin with, Plaintiffs do not come close to establishing personal jurisdiction over any Defendant. Plaintiffs' theory of jurisdiction boils down to an allegation that Defendants knew Plaintiffs reside in Illinois and intended to harm them here, but the Supreme Court recognized more than 40 years ago, in *Calder v. Jones*, 465 U.S. 783 (1984), that Due Process requires more. At a minimum, a tort defendant must be shown to have committed conduct giving rise to the tort in or aimed at the forum state (not merely at a plaintiff who happens to reside there). Yet there are no such allegations in Plaintiffs' Complaint. All Plaintiffs can muster are a series of vague allegations that "Defendants" conducted various types of business in or relating to Illinois. Such group-pled allegations cannot be used to establish jurisdiction over individual defendants and, even were it otherwise, the alleged business did not give rise to Plaintiffs' claims, so it is jurisdictionally irrelevant.

Even if Plaintiffs could establish jurisdiction, their claims are facially meritless. The defamation claim fails, *inter alia*, because Plaintiffs do not identify a false statement of fact attributed to any Defendant, and, to the extent identified at all, the statements are not actionable under Illinois defamation law. The anti-SLAPP claim fails, *inter alia*, because the RICO claim AFC asserted in the SDNY Action was predicated on Loevy's and Kanovitz's fraudulent conduct, not on any protected activity, which precludes the SDNY Action from qualifying as a SLAPP suit.

## BACKGROUND

In April 2021, AFC and certain co-lenders agreed to lend $75 million (that figure would

2

grow to almost $90 million) to a group of cannabis companies ultimately owned and controlled by Plaintiffs Loevy and Kanovitz. (SDNY Compl. ¶¶ 26-39, 182; SDNY Am. Compl. ¶¶ 18-36, 54-67).[1] The loan was to mature in May 2026. Loevy and Kanovitz personally guaranteed certain of the Borrowers' obligations under the loan—including that the Borrowers would not make misrepresentations to AFC—under a Shareholder Guaranty. (Ex. 1 ¶¶ 39-49; Ex. 2 ¶¶ 43-46.)

Notwithstanding their guaranty, Loevy and Kanovitz systematically looted AFC's financing for their own benefit and lied to AFC about it. (Ex. 1 ¶¶ 51-63, 71-90; Ex. 2 ¶¶ 47-68, 74-83). Among other things, Plaintiffs:

- transferred nearly $20 million in loan proceeds to entities they owned, but which are not Borrowers under the credit agreement (Ex. 1 ¶ 71; Ex. 2 ¶ 75);

- diverted nearly $1 million in cash collateral to pay debt incurred by their own law firm (Ex. 1 ¶ 79; Ex. 2 ¶ 78);

- submitted fraudulent invoices to obtain disbursements (Ex. 1 ¶¶ 116-117; Ex. 2 ¶¶ 90-91);

- concealed millions in prohibited payments through false compliance certificates (Ex. 1 ¶¶ 134, 138-145; Ex. 2 ¶¶ 102-106); and

- signed a perfection certificate that deliberately omitted pledged assets—allowing Loevy to sell those assets and pocket the proceeds (Ex. 1 ¶¶ 119-133; Ex. 2 ¶¶ 96-100).

Further, between September 2021 and February 2025, the Borrowers drew on the loan facility nearly 100 times, certifying each time in writing that no loan default had occurred. (Ex. 1 ¶ 146; Ex. 2 ¶ 107.) In view of the above-described misconduct, these certifications were false. (Ex. 1 ¶¶ 134-145; Ex. 2 ¶¶ 102-106).

In April 2025, after learning of the misconduct, AFC accelerated its loan and prepared to

---

[1] The original complaint in the SDNY Action ("SDNY Compl.") is attached here to as Exhibit 1, and the Amended Complaint ("SDNY Am. Compl") is attached as Exhibit 2. Courts may take judicial notice of prior judicial proceedings. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

exercise its foreclosure remedies against the Borrowers. AFC affiliates also filed the SDNY Action against Loevy and Kanovitz to enforce the Shareholder Guaranty and assert tort claims arising from their fraud and other misconduct.[2] *See* Ex. 1. The SDNY Action was initially pled as a civil RICO case. After changing counsel, AFC filed an amended complaint that excised the RICO claim and repleaded the same core allegations in support of a fraud claim. Loevy and Kanovitz moved to dismiss the Amended Complaint, but the fraud claim survived and the case remains pending.[3]

On April 17, 2025, two Borrowers controlled by Loevy and Kanovitz filed suit in New Jersey to dispute the existence of defaults and prevent AFC from exercising its rights.[4] *Hayden Gateway LLC v. Advanced Flower Cap. Inc.* (D.N.J. Apr. 17, 2025, 3:25-cv-02789) (the "New Jersey Action"). The next day, Law360 published an article on the New Jersey Action, which reported that the Borrowers' complaint accused AFC of trying "to extort $10 million from the Borrowers" and "l[ying] about the company being in default in order to steal funds out of two of the company's bank accounts." (A true and correct copy of the Law360 article is attached hereto as Exhibit 3.) The article also noted that the Borrowers' suit was "the latest escalation in litigation between the two parties," and it noted that AFC had filed the SDNY Action accusing Loevy and

---

[2] On April 28, 2025, an AFC affiliate filed a separate suit in New York against Loevy's and Kanovitz's entity JG HoldCo LLC on a separate guarantee of the same underlying loan. *See AFC Agent LLC v. JG HoldCo LLC* (Supr. Ct. N.Y. Cnty. Apr. 28, 2025, Index No. 652644/2025).

[3] The court also denied defendants' motion to transfer venue to New Jersey and dismissed AFC's breach of contract claim on the Shareholder Guaranty as premature (because the loan had not matured), AFC's tortious interference and conversion claims as duplicative of the contract claim, and AFC's aiding and abetting fraud claim against Kanovitz for failure to allege actual knowledge of Loevy's fraud. 2026 WL 892269 (ECF No. 40).

[4] The Second New Jersey Lawsuit is but one of several other litigations Plaintiffs and the Borrowers have brought against AFC. JG HoldCo, Bloc, and Hayden have sued Leonard Tannenbaum, Robyn Tannenbaum, Daniel Neville, and multiple AFC entities in California state court alleging, among other things, breach of fiduciary duty. *JG Holdco LLC et al. v. Tannenbaum et al.*, No. 25STCV26439 (Cal. Super. Ct. Sept. 8, 2025). That case was subsequently dismissed against the AFC defendants for lack of personal jurisdiction, and Plaintiffs have since filed a substantially similar action in Florida state court. *JG Holdco LLC v. Tannenbaum*, No. [Case No. TBD], (Fla. 15th Cir. Ct. filed Mar. 26, 2026).

Kanovitz of fraud-based racketeering the previous week. Ex. 3. An "AFC Spokesperson" was reported as saying the New Jersey Action "is an attempt to distract from Loevy and Kanovitz's own fraudulent conduct, calling its allegations 'meritless' and 'designed solely to intimidate AFC into abandoning its legitimate rights as a secured creditor,'" and that "'[t]hrough Justice Grown, we believe Mr. Loevy and Mr. Kanovitz have defrauded AFC to line their own pockets and prop up other business ventures.'" *Id.*

## LEGAL STANDARD

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction by a *prima facie* showing of jurisdictional facts. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true, but is not bound to accept legal conclusions couched as factual allegations, and need not assume the truth of mere conclusory allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Plaintiffs' Complaint asserts two claims against Defendants. The first alleges defamation based on statements made by an AFC spokesperson to Law360 and a statement by AFC's CEO during a May 2025 earnings call. The second claim alleges a violation of New York's anti-SLAPP statute based on AFC's filing of a RICO claim against Plaintiffs in the SDNY Action. As explained below, the Complaint must be dismissed because the Court lacks personal jurisdiction over Defendants. Moreover, even if the Court had personal jurisdiction, dismissal would still be required because the allegations of the Complaint are not sufficient to plead either of the claims asserted.

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

The allegations of the Complaint do not establish a prima facie showing that any Defendant is subject to jurisdiction in Illinois.  The only purported provision of the Illinois long-arm statute Plaintiffs cite as a basis for jurisdiction, 735 ILCS 5/2-209(1), does not exist.  (Compl. ¶ 24.)  And, more fundamentally, the Complaint's jurisdictional allegations do not satisfy Due Process.

In trying to plead jurisdiction, Plaintiffs rely entirely on group-pled allegations that ascribe conduct to "Defendants" as a whole, without specifying who allegedly did what.  (*Id*.)  But courts must "decide whether [they] can exercise personal jurisdiction over each defendant individually and not as a group," and "clear presentation of the relevant conduct of each defendant . . . is essential."  *Tamburo v. Dworkin*, 2006 WL 8444037, at *2 (N.D. Ill. Aug. 3, 2006); *see also Brownell v. Alcon Entm't, LLC*, 2017 WL 11884028, at *2 (N.D. Ill. Dec. 19, 2017) ("Plaintiffs cannot broadly assert jurisdiction over Defendants as a group, but must show that each individual Defendant is subject to Court's jurisdiction").  Those group-pled allegations, moreover, do not even specifically describe what "Defendants," as a whole, supposedly did.  Plaintiffs allege only broad categories of conduct (e.g., lending to borrowers with Illinois contacts) and fail to identify any actual instances of such conduct. (Compl. ¶ 24.)  There is literally not a single allegation identifying a specific instance of forum-related conduct by a specific Defendant.  This is manifestly insufficient to allege jurisdiction over any Defendant.

Plaintiffs also ignore that personal jurisdiction must be predicated on forum-related conduct that gave rise to the claims in the lawsuit.  *See, e.g., Advanced Tactical Ordnance Sys., LLC*, 751 F.3d 796 at 801 ("*suit-related* conduct must create a substantial connection with the forum State.") (citation omitted); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019) ("alleged injury must have arisen out of the defendant's forum-related activities.").  Most of the Complaint's jurisdictional allegations concern conduct wholly *un*related to Plaintiffs'

6

defamation and anti-SLAPP claims, including:  "contracting with Plaintiffs"; "taking security interests in various real and personal property"; "committing tortious acts"; "attending business conferences"; "lending to borrowers"; and "contracting with other Illinois individuals and businesses."  (Compl. ¶¶ 24, 25.)  The jurisdictionally irrelevant conduct also includes Plaintiffs' vague allegation, on "information and belief", that unspecified Defendants made unspecified statements about Plaintiffs, not alleged to be defamatory, while present in Illinois.  (*Id.* ¶ 24.)

Plaintiffs' remaining allegations that "Defendants knew and intended that the defamatory statements would reach and impact . . . Plaintiffs' business operations in Illinois" and that "the harm intentionally caused to Plaintiffs Loevy and Kanovitz occurred primarily in Illinois, . . . as the Defendants intended" (*id.* ¶¶ 24, 26) are insufficient because it is well-established that personal jurisdiction cannot be based solely on an allegation that a defendant knew the plaintiff resided in the forum and would suffer harm there.  As the Supreme Court has held, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Applying this doctrine, the Seventh Circuit has explained that a plaintiff must allege "a forum-state injury *and 'something more' directed at that state* before jurisdiction over a defendant may be considered proper." *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) (emphasis added).  That "something more" must be conduct the defendant "'expressly aimed'" at the forum state. *Hoffman v. Barnes*, 2012 WL 1021837, at *2-3 (N.D. Ill. Mar. 26, 2012) (quoting *Calder*, 465 U.S. at 789-90).  In *Calder*, the "something more" requirement was satisfied because the defendants were reporters who were not merely alleged to have defamed a California resident but also to have written a defamatory story focused on California, researched via California, and for a

7

publication that they knew was widely circulated in California. *See Walden*, 571 U.S. at 288. In *Tamburo*, the "something more" requirement was satisfied because the defendant not only posted a defamatory message about an Illinois resident but also published the plaintiff's Illinois address and urged readers to contact the plaintiff and harass him there. 601 F.3d at 706.

Plaintiffs here do not allege "something more." The only claim-related conduct by Defendants alleged in the Complaint is making supposedly defamatory statements to Law360—a legal website available throughout the United States (if not beyond)—and filing a lawsuit in New York. None of that conduct is alleged to have been connected to Illinois, much less "expressly aimed" here. *Calder*, 465 U.S. at 789. It is by now well-established that a defamation defendant cannot be subject to personal jurisdiction in the plaintiff's home state merely because a statement published on a website was thereby accessible in that state. *See, e.g., Herman v. Cataphora*, 730 F.3d 460 (5th Cir. 2013) (no personal jurisdiction in Louisiana for statements made to Above the Law, a national website, where defendant and interviewer were both in California); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 319-21 (5th Cir. 2021) (online article about Texas plaintiff did not create Texas jurisdiction over publisher); *Blessing v. Chandrasekhar*, 988 F.3d 889, 904-06 (6th Cir. 2021) (tweets about Kentucky resident did not subject out-of-state defendants to Kentucky jurisdiction); *McCall v. Zotos*, 2023 WL 3946827 (11th Cir. 2023) (no Florida jurisdiction over Illinois defendant who posted an Amazon review accessible nationwide, where there were no allegations she targeted Florida readers); *Burdick v. Superior Court*, 233 Cal. App. 4th 8, 25 (2015) (Facebook post about California resident insufficient to establish California jurisdiction absent evidence of targeting).

This case is thus on all fours with this Court's *Hoffman* decision. In *Hoffman*, the Illinois plaintiffs alleged that the North Carolina defendant posted defamatory comments on the internet

8

that were intended "to injure Plaintiffs' reputations and divert sales from Plaintiffs in Illinois." 2012 WL 1021837, at *4. The court dismissed for lack of jurisdiction because the plaintiffs alleged "no evidence of express aiming beyond the plaintiffs' mere residence in Illinois. . . . Although diverting sales away from M & R appears to be one of Barnes' goals, nothing in the complaint or any of the comments indicates that Barnes targeted Illinois." *Id.* So too here. Even accepting (for motion to dismiss purposes) that Defendants made defamatory statements they believed would injure Plaintiffs who reside in Illinois, the Complaint does not allege any conduct by Defendants aimed at Illinois, so they fail to allege personal jurisdiction, and the Complaint must be dismissed.

## II. THE COMPLAINT FAILS TO STATE A DEFAMATION CLAIM

Plaintiffs' defamation claim must be dismissed because it fails to attribute a specific defamatory statement to any individual defendant and because the statements it alleges were defamatory are not actionable.

### A. Plaintiffs Do Not Even Attempt to Attribute A Defamatory Statement to Seven of the Nine Defendants

A plaintiff who would plead a defamation claim must identify a specific defamatory statement and attribute it to a specific defendant. Accusing a group of defendants of defamation without specifying who said what is not permitted. *See Heying v. Simonaitis*, 466 N.E.2d 1137, 1142 (Ill. 1984) (defamation claim dismissed where plaintiff failed to attribute specific statements to particular defendants). That, however, is what Loevy and Kanovitz do here. Their Complaint fails to attribute a single alleged defamatory statement to seven of the nine Defendants (*i.e.*, all but Daniel Neville and Robyn Tannenbaum), and the defamation claim thus must be dismissed as to those seven for that reason alone.[5]

---

[5] Plaintiffs cannot remedy this failing with vague assertions that the other Defendants were "conspirators." *See Heying*, 466 N.E.2d at 1142 (dismissing defamation claims where statements "were made by the defendant physicians rather than the nurses.").

9

### B. Plaintiffs Do Not Plead Defamatory Statements

Plaintiffs premise their defamation claim primarily upon the statements attributed to an "AFC Spokesman" in Law360 that the New Jersey Action "is an attempt to distract from Loevy and Kanovitz's own fraudulent conduct . . . 'designed solely to intimidate AFC into abandoning its legitimate rights as a secured creditor'" and that "we believe Mr. Loevy and Mr. Kanovitz have defrauded AFC to line their own pockets and prop up other business ventures" (the "Law360 Statements"). Ex. 3, (Compl. ¶¶ 174-76.) In bringing a defamation claim based on statements made in an article describing the numerous battles being fought in the parties' ongoing litigations against each other, Plaintiffs are strategically attempting to open yet another front in that war. But the gambit fails. To begin with, because the Law360 Statements are indiscriminately attributed to all Defendants, they fail to state a claim against any Defendant. *See Heying*, 466 N.E.2d at 1142. And that aside, the Law360 Statements are not actionable, as a matter of law, under two well-established doctrines of defamation law.

*First*, the Law360 Statements are not actionable because they are statements of opinion that cannot "reasonably be interpreted as stating actual fact." *Imperial Apparel, Ltd. v. Cosmo Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990). "[W]hether or not a statement is a factual assertion that could give rise to a defamation claim is a question of law for the court." *Imperial Apparel*, 882 N.E.2d at 1022. In making that assessment, courts are "guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content." *Id.* (citing *Solaia Technology, LLC v. Specialty Publishing Co.*, 852 N.E.2d 825, 840 (Ill. 2006)). Courts applying those criteria must consider the challenged statement "from the perspective of an ordinary reader." *Imperial Apparel*, 882 N.E.2d at 1022.

10

Under these standards, the Law360 Statements are clearly not actionable. The assertions that Plaintiffs filed the New Jersey Action to distract from their fraudulent conduct and that AFC "believe[d]" Plaintiffs had defrauded AFC to line their pockets were made to a legal periodical and appeared in an article that described multiple litigations that Plaintiffs and AFC have filed against each other. The same article reported that Plaintiffs had accused AFC of extorting them and trying to steal money out of their bank accounts. Reading the Law360 Statements together and in that context, it is obvious that the average reader would not have understood the comments, which did not include any specific facts to back up the accusations of fraud, as a precise, factual assertion that Plaintiffs had engaged in verified, specific misconduct.[6] Rather, the average reader, almost certainly a lawyer, would correctly interpret those statements as AFC generally describing claims it had made, but not yet proven, as part of the bitter litigations between two sides who were aggressively accusing each other of bad behavior in court.[7] As in *Hopewell v. Vitullo*, 701 N.E.2d 99, 104 (Ill. App. Ct. 1998), the "tenor and context" of the article, as well as the colorful rhetoric (*e.g.*, "line their pockets"), made clear that the alleged defamatory statements were legal "posturing," not assertions of verified facts.

*Second*, for similar reasons, the Law360 Statements cannot be a basis for Plaintiffs' defamation claim under the so-called "innocent-construction rule," by which an allegedly defamatory statement "is not actionable if it is reasonably capable of an innocent construction." *Solaia Tech.*, 852 N.E.2d at 839. As is the case with the opinion doctrine, courts applying the

---

[6] To be sure, AFC's Complaint in the SDNY Action included specific facts to back up AFC's claims of fraud, but the Complaint is absolutely privileged and cannot be the basis for a defamation claim. *Kim v. Hoseney*, 2013 WL 474511, at *2 (N.D. Ill. Feb. 7, 2013), *aff'd sub nom. Kim v. Hoseney*, 545 F. App'x 521 (7th Cir. 2013) (citing *Defend v. Lascelles*, 500 N.E.2d 712, 714-715, 717-18 (Ill. App. Ct. 1986)).

[7] The statement that AFC believed Plaintiffs had defrauded it to line their pockets and prop up their other businesses was, in fact, an almost verbatim quote from the complaint in the SDNY Action. Ex. 1 ¶ 2.

11

innocent-construction rule must "consider the statement in context and [] give the words of the statement, and any implications arising from them, their natural and obvious meaning" and "if, as so construed, the statement may reasonably be innocently interpreted . . . it cannot be actionable *per se*." *Id.* Under these standards, the Law360 Statements are not actionable because, read in context and given their natural and obvious meaning, they are not merely capable of being construed as, but are most likely to have been construed as, conveying the non-defamatory message that AFC filed a lawsuit alleging fraud, believes the lawsuit will establish fraud, and views Plaintiffs' competing lawsuit as a tactical response to AFC's claims.[8]

Accordingly, under either or both the opinion doctrine or the innocent-construction rule, the Law360 Statements cannot support a defamation claim. That leaves only Plaintiffs' complaint that Defendant Neville, under the direction of Defendant Robyn Tannenbaum, defamed them "by stating to AFCG's shareholders in a May 14, 2025, earnings call that Plaintiffs' companies were in default under the Credit Agreement and 2024 Forbearance." (Compl. ¶ 179.) This is easily addressed. *First*, the Complaint does not quote, paraphrase with any specificity, or otherwise identify the actual words spoken on the earnings call as required to plead defamation. *See Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009) (dismissing defamation claim where "the publication and the content of defendant's alleged statements are pled strictly 'on information and belief,'" and "none of the allegedly defamatory words appears in quotation marks"). *Second*, even as characterized by Plaintiffs, the earnings call statement was not about Plaintiffs but about the Borrowers and so did not defame Plaintiffs. (Compl. ¶ 179.) *Third,* a statement that the Borrowers were in default under their agreements was not defamatory toward anyone. Default is a contractual

---

[8]  To the extent Plaintiffs complain they were defamed by the statement that their filing of the New Jersey Action was tactical and designed to intimidate AFC (Compl. ¶¶ 176-177), that, too, fails as a matter of law because the challenged statement is an obviously subjective characterization of Plaintiffs' motives rather than an objectively verifiable assertion of fact.

status, not a moral judgment; a statement that someone is in default does not imply dishonesty, wrongdoing, or anything else that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Solaia Tech*, 852 N.E.2d at 839.

### III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER N.Y. CIV. RIGHTS LAW § 70-A

A strategic lawsuit against public petition and participation—a SLAPP suit—is a meritless lawsuit brought to chill the defendant's exercise of free speech or petition rights. *See* N.Y. Civ. Rights Law § 76-a. New York's anti-SLAPP law provides that a person who files a SLAPP suit can be liable in damages to the person against whom the SLAPP suit is brought. *See* N.Y. Civ. Rights Law § 70-a.

To state a claim under New York's anti-SLAPP statute, a plaintiff must allege, among other things, that the defendant filed "a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. Rights Law § 76-a; *see also id.* § 70-a. Where a plaintiff fails to allege that the defendant brought a suit fitting that description, an anti-SLAPP claim must be dismissed. *See, e.g.*, *Robbins v. 315 W. 103 Enters. LLC*, 204 A.D.3d 551, 552 (N.Y. App. Div. 2022); *Doo v. Sie-En Yu*, 31 Misc. 3d 1204(A), at \*10 (Sup. Ct. Queens Cnty. 2011). Loevy's and Kanovitz's anti-SLAPP claim fails for this and other reasons.

First, Plaintiffs' anti-SLAPP claim is predicated on Defendants' supposed filing of the RICO claim in the SDNY Action, and it is evident from the face of the complaint in the SDNY Action that the RICO claim therein was not based on any protected activity by Loevy and

13

Kanovitz. Plaintiffs maintain that their filing of the New Jersey Action was protected activity (Compl. ¶¶ 4-6.), but the filing of that lawsuit was not pled as a basis for the SDNY Action RICO claim. Rather, as Plaintiffs concede, AFC's RICO claim against Loevy and Kanovitz was based on their fraud and looting—specifically, the alleged misappropriation of tens of millions of dollars from AFC—which assuredly is *not* protected activity. (Compl. ¶ 6.) *See TRB Acquisitions LLC v. Yedid*, 239 A.D.3d 578, 579-80 (N.Y. App. Div. 2025) (holding action was not a SLAPP suit because "allegations of blackmail and extortion do not constitute 'lawful conduct'"). The New Jersey Action is nowhere mentioned in the SDNY RICO claim.

Second, New York's anti-SLAPP statute authorizes a claim only against a "person who commenced or continued" a SLAPP suit. N.Y. Civ. Rights Law § 70-a. The SDNY Action, however, was commenced only by AFC, which is not a defendant here. Plaintiffs' group-pled allegation that all Defendants were responsible for bringing the SDNY Action is insufficient to state a claim against them. The Complaint contains no allegations that any Defendant personally filed, signed or directed the filing of the SDNY Action and the fact that some Defendants served as officers or directors of AFC does not make them personally liable under the statute. *PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 493-494 (S.D.N.Y. 2017) ("under New York law, an officer or director is not, merely by virtue of his office, liable for the tortious acts of the corporation.") Plaintiffs have not alleged that any individual Defendant personally "commenced or continued" the SDNY Action, and therefore the anti-SLAPP claim fails as to each of them.

Finally, Plaintiffs' § 70-a claim fails as to the federal RICO counts that form the overwhelming core of the underlying action.[9] Under the Supremacy Clause, a state statute that

---

[9] Plaintiffs' own complaint makes clear their § 70-a claim rests almost entirely on the RICO allegations, not the pendent state law claims. Count II repeatedly targets the "RICO Lawsuit" and "RICO allegations" specifically, (Compl. ¶¶ 10, 186-187, 189-192), and their damages narrative centers entirely on reputational harm from public accusations of criminal racketeering, (*id*. ¶¶ 126-128, 139, 149-151).

14

conflicts with or frustrates federal law must give way. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). New York's anti-SLAPP statute does exactly that when applied to a federal cause of action brought in federal court. Allowing state anti-SLAPP claims to proceed based on federal causes of action would result in "inconsistent application of federal law" because parties would be subject to different anti-SLAPP regimes depending on the state in which they file their federal action. *Murchinson Ltd. v. Nano Dimension Ltd.*, 2025 WL 1397615, at *6 (S.D.N.Y. May 14, 2025). The Supremacy Clause precludes that outcome. *Id.*; *see also Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022) (declining to allow a New York anti-SLAPP counterclaim based on federal claims). The Court should dismiss Plaintiffs' claim under § 70-a.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' claims with prejudice.

15

Dated: April 20, 2026
      Chicago, Illinois

**QUINN    EMANUEL    URQUHART   & SULLIVAN, LLP**

*/s/ Daniel R. Lombard*
Daniel R. Lombard
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
daniellombard@quinnemanuel.com

Kevin S. Reed (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jacqueline M. Stykes (*pro hac vice*)
Joseph Bacchi (*pro hac vice*)
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
kevinreed@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jacquelinestykes@quinnemanuel.com
josephbacchi@quinnemanuel.com

Jason D. Sternberg (*pro hac vice*)
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133
Telephone: (786) 850-3607
jasonsternberg@quinnemanuel.com

*Attorneys for Defendants Leonard Tannenbaum, Bernard Berman, Robyn Tannenbaum, Daniel Neville, Alexander Frank, Thomas Harrison, Brandon Hetzel, Robert Levy, and Marnie Sudnow*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I filed the foregoing document with the United States District Court for the Northern District of Illinois using the CM/ECF system and caused it to be served on all registered participants via the notice of electronic filing.

*/s/ Daniel R. Lombard*

17